CHARLES SMITH, ADMINISTRATOR OF ESEK M. WEAVER, *v.* J. EDWARD WILEY, AND JOHN WILEY, TRUSTEE.

*Trustee Process.    Promissory Note.*

The principle is well settled in this state, that a man can not be made liable by a trustee process, for notes or securities which he holds for the benefit, and as agent, of another.

But where A gave his notes to B for the amount of B's debt against C, and took a deed from C of certain lands, under an agreement to sell them when he could advantageously, and apply the avails to pay A the amount of his notes to B, and the balance, if any, to be paid to C or for his benefit, and, after making some proper expenditures on said lands, A sold the same for a greater sum than the amount of his claim thereon, and took pay partly in notes secured by mortgage, both running to himself, which he held as his own property, and not as agent of C, which notes were good for their amounts, but had not been paid at the time of A's disclosure as trustee, it was *held*, that A was chargeable as trustee of C for the excess in the sale of said lands above A's said liabilities and expenditures, which he had paid, and which amounted to more than the cash he had received for said lands.

TRUSTEE PROCESS. The commissioner to whom the case was referred, reported as follows:

" From the disclosure of the trustee and the other evidence, I find the following facts : J. Edward Wiley, the principal defendant, is a son of John Wiley, and son-in-law of Solomon Wilson. Previous to 1858, J. Edward Wiley had been somewhat extensively engaged in farming and speculating in real estate, in the state of Illinois. He had procured loans from parties in the east, and among others one from the plaintiff's intestate to the amount of some $1200. He had also obtained quite an amount of money of Solomon Wilson, which he had invested in three quarter-sections of land situated in the town of Galva, Illinois. The title to the Galva land stood in J. Edward Wiley.

" In the month of February, 1858, said Wilson and the trustee, both of whom then resided in Vermont, went to Illinois to visit J. Edward and his family. While there they became somewhat doubtful as to the solvency of J. Edward, so much so that Wilson became anxious to secure his advances to J. Edward. While there an arrangement was entered into between the trustee, Wilson, and J. Edward and his wife, by the terms of which J. Edward and his wife agreed to convey to the trustee the three quarter-sections of land above referred to, and the trustee agreed to give his notes to Wilson for the amount of his debt against J. Edward ; and it was further agreed and understood, that the trustee should hold these lands until an advantageous opportunity was offered to sell them, and when sold the avails should be applied in the first place to pay the trustee the amount for which he should become liable to Wilson, and the balance, if any, should be paid to J. Edward, or otherwise disposed of for his benefit or that of his family.

" Pursuant to this arrangement, on the 12th day of February, 1858, J. Edward Wiley and his wife Elizabeth executed a deed of the three quarter-sections of Galva land to the trustee.

" On the 25th of December, 1858, the trustee executed and delivered to said Wilson his (the trustee's) four promissory notes for $4075, this being the amount then due Wilson from J. Edward, inclusive of interest. One of said notes was for $1075, and was payable at the Bellows Falls bank in one year, with interest; three of said notes were for $1000 each, and were payable respectively with interest at said bank in two, three, and four years from date. All of said notes have since been paid by the trustee, with the annual interest.

" At the time the trustee took said deed, he knew that his son was indebted to the plaintiff's intestate, and the amount of such indebtedness. I am not, however, satisfied that when the trustee took said deed, there was any intent to defraud the intestate ; on the contrary, I am inclined to the belief, from the evidence, that

both the trustee and J. Edward contemplated paying the debt of the intestate (who was a relative of J. Edward and the trustee) out of the avails of said lands when the same should be sold.

" August 10, 1859, the trustee sold one of the quarter-sections conveyed by said deed, to his son D. L. Wiley, and, by agreement with J. Edward Wiley, took a note for $580 which D. L. Wiley held against him, in full payment.

" About the first day of January, 1860 [the precise time did not appear in evidence], the trustee sold the remaining two quarter-sections to one Mack, for $6400. He was paid in cash at the delivery of the deed $2900, and for the balance he took the purchaser's negotiable note or notes, payable to himself with interest, and secured by mortgage upon the lands sold. The amount of the note or notes, at date, was $3506.66. No part of these notes has been paid to the trustee.

" These notes I find to be good for their amount, and that they were received and are now held by the trustee as his own property, and not as agent of J. Edward Wiley. After the trustee took his deed of the three quarter-sections as aforesaid, he made certain expenditures to perfect his title to the same and clear it of incumbrances. The total amount of the trustee's expenditures is $5326.11.

" The trustee had actually paid out the above sum of $5326.11 before the service of this process upon him, while he had received in money only the sum of $2900.

" If, in the opinion of the court, the trustee should be made chargeable for the amount he sold the three quarter-sections for, in excess of his expenditures, and without regard to whether the notes had been collected by him before disclosure, then I find that the trustee had in his hands subject to this process, the sum of $1073.89, to which interest should be added from the first day of January, 1860.

" If, however, the court should be of the opinion that the trustee can not be made chargeable, until the notes taken by him for the land have actually been collected, then I find that said John Wiley is not trustee of said J. Edward Wiley."

The court at the April term, 1865, BARRETT, J., presiding, adjudged the trustee chargeable, upon the foregoing report, for the sum with interest as therein found, to which the trustee excepted.

*H. E. Stoughton* and *Chas. E. Arnold,* for the trustee.

The court can not hold as matter of law on this state of facts, that the trustee became liable to the principal debtor for the amount of the notes secured by said mortgage.

If the trustee can be held chargeable in this suit at all, it must be upon the ground that, at the time of service of process and disclosure, he had in his hands money, goods, chattels, rights, or credits of J. Edward Wiley. By money, rights, or credits is meant cash, or debts due from him to the principal debtor. They must be such debts as the defendant could enforce against the trustee at law. It is not sufficient that it is a mere equity. The court has no chancery power on this subject. *Hoyt* v. *Swift and Blake, trs.*, 13 Vt., 129. The trustee can not be held by reason of having securities in his hands belonging to the principal debtor (35 Vt., 173), even though such securities were promissory notes taken for money belonging to the principal debtor, and made payable to the trustee. *Scofield* v. *White and Thomas, trs.*, 29 Vt., 330 ; *Sargeant* v. *Leland, tr.*, 2 Vt., 277. If the principal debtor is in fact entitled to the money due on the notes, the plaintiff in order to reach it by trustee process should join Mack, who alone owed the money as a party in the trustee process. If the transfer was fraudulent, still, by attempting to enforce the collection of the debt by trustee process, he ratifies and sanctions any disposition the trustee may have made of the property. *Bishop et al.* v. *Catlin and Horton, trs.*, 28 Vt., 71 ; *Merrill et al.* v. *Englesby, tr.*, 28 Vt., 150.

*A. Stoddard*, for the plaintiff.

When the trustee became the owner of the securities given in payment for the lands, in his own right, then, *at that instant*, he became debtor to the principal debtor for the balance of the proceeds of the sale, not then accounted for. Sedgwick on Damages, 314, 317, 319.

This would be so, if it did not distinctly appear that the trustee took the notes and securities as his own, from the fact that no authority was given to sell on credit; but when *the notes were received, held and controlled as his own*, the conclusion is irresistible.

The opinion of the court was delivered by

PIERPOINT, C. J. This case comes before this court on exceptions taken by the trustee to the decision of the county court, making him chargeable.

It appears from the commissioner's report, that the principal debtor was largely indebted to one Wilson, who wanted security for his debt. The trustee gave his notes to Wilson for the amount of such debt, and the said principal debtor thereupon gave the said trustee a deed of three quarter-sections of land, under an agreement that the said trustee should hold the same until he had a good opportunity to sell it, and when sold the avails should be applied to pay the said trustee the amount he had become liable for, to Wilson, and the balance, if any, to be paid to the principal debtor or for his benefit.

Afterward the trustee sold one quarter-section of this land to a brother of the principal debtor, and, by agreement with the said debtor, took in payment a note which the purchaser held against him. The other two quarter-sections the trustee sold for the sum of 6400 dollars, receiving in cash 2900 dollars, and for the balance he took the purchaser's notes, secured by a mortgage upon the lands sold. The notes and mortgage were made running to himself. These notes had not been paid at the time of the hearing before the commissioner. It appears further from the commissioner's report, that, at the time of the hearing, the amount of the cash received and the notes taken for the said two quarter-sections, exceeded the amount of the said trustee's claim thereon by about 1073 dollars; and it is for this sum that the plaintiff seeks to make the trustee chargeable.

The trustee insists, that he should not be made chargeable, because he had not collected the money on the notes he took for the land, and had not received in money sufficient to reimburse himself for the money he had paid to cancel his liabilities for the principal debtor, and that he holds the said notes as securities for the benefit of, and as agent of, the principal debtor, so far at least as the excess is concerned. If this be so, then it is clear he can not be made chargeable in this suit; for the principle is well settled in this state, that a man can not be made liable by a trustee process for notes or securities which he holds for the benefit of, and as agent of, another.

The question then arises, how did the trustee hold the notes in question? Did he hold them in his own right as his own property, or as agent for the principal debtor?

The legal title to the land sold, was in him. Upon its sale he took the notes payable to himself, and took the mortgage to himself; he had the sole and entire control of both.

The commissioner finds that the notes were received and are now held by the trustee as his own property, and not as the agent of the principal debtor. The counsel for the trustee claims that this is only a statement of a legal conclusion based upon the facts before reported, and that such facts are not sufficient to warrant it.

But the commissioner has not so reported it, and there is nothing in the case to indicate that he so regarded it. It stands as a fact found by him from the evidence which he had before him, and as such we are bound to consider it.

The fact being established that the trustee has taken these notes, and appropriated them to himself, and converted them to his own use, he must stand in respect to them and the principal debtor, in the same position that he would if he had actually received the money upon them. The principal debtor would have an undoubted right to call upon him for the surplus. This being so, the trustee was properly made chargeable in this suit.

The judgment of the county court is affirmed.